Nott, J.
The grounds on which it is attempted to support this motion, are : 1. That when the City Council was established there was an act of assembly of force in this State, which imposed a fine of £50 sterling on any person who should retail spirits without license, which penalty could not be recovered, but through the medium of a grand jury ; and, as the city has no grand jury, it could not take cognizance of the case. 2. That a corporation aggregate cannot sue as a common informer.
With regard to these two grounds, I will only observe that this *538 Penalty may be recovered either by indictment or action of debt; and, admitting it to be an “ established principle of law,” as the suggestion states, that a corporation aggregate cannot sue as a common btformer, yet it is a principle of law as well established, that a corporation aggregate may sue and be sued in an action of debt, as well as an individual; the motion, therefore, cannot succeed on either.of these grounds.
3. It is contended that the act of assembly passed December, 1805, authorizing the City Council to ascertain and define the boundaries of the wards of the city, did not authorize them to lay off the wards in a different manner from what they were before ; and, therefore, the election of wardens according to the present di. vision of the city, and all the proceedings of the Council since, were null and void.
By the act of assembly passed the 13th day of August, 1783, the city of Charleston was divided into thirteen wards, which were designated by metes and bounds ; but not having been expressed with sufficient precision, the City Council were authorized by the act of 1805, to ascertain and define, either by commissioners or in any other manner they might think expedient, the respective boundaries of the said wards. The words “ ascertain and define” did not imply a power to alter or make new, but to make certain, some pre-existing fact, which was before doubtful. We must look to the act then, and see whether, from the contents, there is any thing from whence we can infer that the legislature intends to give them a more extensive signification.
The act is entitled, “ an act to ascertain and define in the preamble the words-are, “ to ascertain and adjustin the enacting clause, “ to ascertain and define the same words are then three times repeated, except that in the preamble, the word “ adjust” is introduced instead of “ define.”
The advocates for this power in the City Council, derive no aid from that substitute ; the word “ adjust” cannot be construed to extend the meaning of the word “ define on the contrary, it would seem rather to restrain than to extend its meaning. Suppose for instance, commissioners should be appointed to ascertain and define or adjust the respective boundaries of Great Britain, Spain and the United States ; would it be pretended that they were authorized to make new and arbitrary lines ? Would it not rather be understood to mean that they should ascertain by actual survey, and define by distinct and visible marks, lines already settled by treaty, but exis. ting only on paper. The case before us is exactly parallel. The *539 legislature has settled the limits of the'wards ; but it is referred to the City Council to ascertain [and define them. If the city had never been laid off into, wards, I should have supposed that these words might have had the meaning now contended for, but under existing circumstances, I think the City Council have exceeded their powers.
Another ground taken is, that the constitution requires the judges of the superior and inferior courts to be appointed by the legislature, and commissioned by the governor ; whereas the judge bf the City Court is elected by the City Council, and commissioned by the intendant, and, therefore, his commission is void.
The words of the constitution which have relation to this subject, are, “ The judicial power shall be vested in such superior and inferior courts of law and equity, as the legislature shall from time to time direct and establish ; the judges of each shall hold their commissions during good behavior. Art. 3, sec. 1. The judges o-f the superior court shall be elected by joint ballot of both houses in the house of representatives. Art. 4, sec. 1. All commissions shall be in the name, and by the authority of the State of South Carolina, and be sealed with the seal of the State, and signed by the governor. Section the third.” «
These clauses of the constitution obviously relate to State officers, and not to officers of corporations. How far that part of the act, which confers on the City Court the power to try causes arising under the laws of the State, and not the by-laws of the City Council, may be considered constitutional, is a question which need not now be considered. I will, however, observe, that in my mind, it is a question of no little importance, and requires the early attention of those, who are interested in having it correctly decided. But I have no doubt, that the legislature has the power to establish corporations, and that they may confer on them the power of appointing judges, with full power to try all cases, arising under their own by-laws. This being a case of that description, was,unquestionably cognizable by the City Court, if the by-law itself is constitutional.
This brings me to the fourth and/last ground, to wit: that this is a public offence, created by an act of the legislature, for the commission of which a fine of fifty pounds is imposed; that it is, therefore, not cognizable by the City Council, and that they could not, by legislating upon it, bring it within the jurisdiction of the City Court.
By the act of 1784, Grimke, 341, it is enacted, that if any per- *540 g0n, or persons, within this State, not duly licensed in manner above directed, shall presume to retail any wine, brandy, rum, &c., or any spirituous liquor, or strong drink whatever, he, she, or they, shall forfeit the sum of fifty pounds sterling, to be recovered in any court „ , , , . , , , . - J . of record m this State ; one half to be paid to the informer, ecc. The City Council have passed a by-law, imposing a penalty of one hundred dollars for the same offence. This by-law must either virtually repeal the act of the legislature, or it must impose an accumulative fine of one hundred dollars, on the penalty provided by the act of 1784. The first is too absurd to obtain any advocate; and the last, too extravagant to admit of argument, and has been abandoned by the counsel.
The whole case, then, at last resolves itself into a question, whether the penal clause of this act embraces the city of Charleston. The act contains three clauses only. By the first, it is enacted, that the price of licences in Charleston, shall be ten pounds per annum, and that they shall be granted by the City Council. By the second, it is enacted, that the price shall be three pounds in the other parts of the State, and the license be granted by the magistrates ; and the third, imposed a penalty of fifty pounds, on “ any person, or persons, within the State, who shall retail spirituous liquors, without being duly licensed, in the manner above directed that is to say, without being licensed by the City Council of Charleston, and by two magistrates, in the other parts of the State.
The words of this act are so plaip, that it is impossible to mistake them. There is no pretence for saying .the penalty does not extend to Charleston ; it extends to every person in the State. The most refined ingenuity cannot raise a doubt upon the subject. The act of 1796, 2 Faust, 101, authorises- the City Council to increase the price of licenses, at their discretion ; but it gives them no discretion, as to the penalty. The act of 1801, 2 Faust, 398, reduces the penalty to one hundred dollars; and although this may virtually repeal the act.of 1784, so far as regards the penalty, yet it must be recovered in the same way as before. No new or additional power is granted to the City Council; and the proviso which, it is contended, excepts the city of Charleston, merely reserves the powers at present granted by law, and now exercised by the corporation of Charleston. It does not legalize any act of the City Council, not before authorised by law.
It is also contended, that the power to grant licences to retail liquors, implies a power to impose a penalty on those who shall retail without; that when they are authorised to do an act, they must *541 necessarily possess the means to carry that act into effect. This might be correct reasoning, if the legislature had not imposed a penalty, and furnished means, much more efficient than the Oily Council possessed, of enforcing it. I am aware of the necessity of giving extensive powers to these city corporations. There are many regulations of a local nature, in a large populous town, which are not of sufficient importance to the State, to attract the attention of the legislature, but which are, nevertheless, very important to the inhabitants of the town. All these fall within the peculiar province of the City Council; but they must not set about regulating the affairs of the State. It is an usurpation of the powers of the legislature, in which they are not to be indulged. The prohibition, therefore, ought not to be granted.
Bkevari», J., concurred. Bay, J., dissented.